OPINION OF THE COURT
Edward J. Greenfield, J.
This is a CPLR article 78 proceeding brought by petitioners James A. Krauskopf, Commissioner of the Department of Social Services, Human Resources Administration of the City of New York, and the City of New York for a judgment annulling the determination of respondent Blum, Commissioner of the Department of Social Services of the State of New York, which disallowed State reimbursement for certain operating costs of the men’s shelter program and for an order and judgment directing that said reimbursement be provided.
Before reaching the merits of petitioners’ position, the court must necessarily decide the threshold issues raised by respondent in her objections in point of law; to wit, that *983 petitioner lacks the requisite standing as a local commissioner or municipality to contest the validity of a State administrative agency’s decision in which the agency’s supervisory authority is being challenged. Respondent also contends in its second objection in point of law, that this court lacks subject matter jurisdiction to entertain suit against the State of New York without its consent and to award monetary damages against the State.
This court will discuss each of the objections by respondent seriatim.
Petitioner City of New York clearly has standing by virtue of its vital financial interest to be protected and is thus a party aggrieved, suffering financial damage due to respondent’s determination to disallow reimbursement pursuant to section 153 of the Social Services Law. Moreover, subdivision c of section 394 of the New York City Charter clearly gives the Corporation Counsel of the City of New York the authority to bring a proceeding to protect the rights, property, or revenue of the city and its citizens (see, also, Matter of County of Nassau v Metropolitan Transp. Auth., 57 Misc 2d 1025, affd 32 AD2d 647).
However, it is clear that petitioner, Commissioner Krauskopf, has no standing to bring this proceeding. In this State, the social services program is a State program, administered through 58 local social services districts under the general supervision of the State Department of Social Services (NY Const, art XVII, § 1; Social Services Law, §§ 17,20,34). Local commissioners, such as petitioner Krauskopf, are specifically denominated as “agents” of the State department (Social Services Law, § 65, subd 3) and are thus a part of and the local arm of a single State administrative agency. As such, local commissioners have no standing to seek judicial review of determinations made by their superior the State Commissioner (Matter of Beaudoin v Toia [Jorczak], 45 NY2d 343). “To recognize any such right would be to undermine the supervisory authority of the State Commissioner and to invite administrative chaos.” (Matter of Beaudoin v Toia [Jorczak], supra, at p 347.) The 1979 enactment of section 22 (subd 3, par [e]) of the Social Services Law giving local commissioners a right to challenge unfavorable fair hearing determinations was *984 made in response to the Court of Appeals holding in Beaudoin v Toia and is limited to fair hearing cases. It, therefore, has no application to this case.
Although a local commissioner may have standing in his individual capacity as a taxpayer (Boryszewski v Brydges, 37 NY2d 361), Commissioner Krauskopf has not taken that course to sue in his individual capacity. Accordingly, his petition is dismissed.
Respondent’s second objection in point of law which seeks dismissal of this petition based upon the court’s alleged lack of subject matter jurisdiction over this proceeding is without merit.
Although it is well-established law that the State is immune from any suit except where it has specifically consented thereto by express constitutional or legislative enactment (see Psaty v Duryea, 306 NY 413), this does not relieve this court of its authority to render a judgment pursuant to CPLR article 78 as to whether or not respondent’s actions were arbitrary and capricious and in derogation of statute or its own regulations (Cass v State of New York, 88 AD2d 305). Thus, the view has been expressed that for this purpose, the State is not the defendant, but that certain ministerial officers who are bound to perform their duties are the true defendants. (24 Carmody-Wait 2d, NY Prac, § 145:264.)
Hence, the State of New York is not a proper party respondent in this matter and as such the petition should be dismissed solely against it, and any recoveries of money damages by plaintiffs as a result of rights declared herein must necessarily await separate actions against the State in the Court of Claims (Matter of Adams v New York State Civ. Serv. Comm., 51 AD2d 668).
Turning now to the merits of petitioner’s claims, this court finds that respondent’s determination disallowing 50% reimbursement was well within its discretion as provided in sections 153, 20 and 34 of the Social Services Law and accordingly the determination cannot be said to be arbitrary or capricious or without a rational basis in law.
It is undisputed that on December 5, 1980, the Deputy Administrator of the Human Resources Administration of the City of New York requested approval from the respon *985 dent Department of Social Services of the State of New York for the use of the men’s shelter at 8 East 3rd Street, New York, New York, for overnight sleeping. On December 17, 1980, respondent approved the temporary use of overnight sleeping at this facility as well as a temporary expansion of the residential capacity to a maximum of 135 men on the condition that adequate staff, security and sanitation be provided. In addition, respondent required written certification by the New York City Fire Department concerning the safety of this arrangement which was provided. On April 1, 1981, respondent revoked its earlier approval of the temporary use and capacity of the shelter and stated that as of May 11,1981, the residential capacity of the shelter must be reduced to a maximum of 16 men as indicated in the facilities operating certificate. The letter from Deputy Commissioner of respondent New York Department of Social Services stressed that unless petitioner complied with these measures, the department would take appropriate measures consistent with State statute and department regulations. It appears that petitioner objected to respondent’s order, necessitating respondent on June 30, 1981 to once again urge compliance with its prior order, indicating the department’s extreme concern about the overcrowding of the men and the possibility that such condition could become a health problem. On August 17, 1981, respondent Blum wrote a letter to petitioner Krauskopf stating that the Human Resources Administration’s continued operation of the men’s shelter over the certified capacity was in violation of section 476.2 (c) of the Regulations of the Department of Social Services (18 NYCRR). Respondent stated that in view of petitioner’s noncompliance with State direction, the respondent would disallow State reimbursement for operation of the men’s shelter in excess of capacity retroactive to May 1, 1981 to continue until the census was reduced to the level mandated in the facilities operating certificate.
On December 13, 1981, respondent issued a memorandum stating that the disallowance was the amount of $117,300 covering costs directly associated with provision of overnight accommodations for persons over capacity. The adjustment was calculated by accumulating salary *986 costs of extra administrative aides at the men’s shelter for the period May 1, 1981 through December 25, 1981.
Petitioner argues that respondent’s action in disallowing reimbursement of the city’s portion of operating costs is arbitrary and capricious in that it is in violation of the consent judgment executed by the parties in Callahan v Carey, so ordered on August 26, 1981 by Mr. Justice Richard Wallach of this court.
In the Callahan case (supra), three homeless men sought a declaratory judgment in October, 1979, against Governor Carey and city and State officials (the parties herein), maintaining that each indigent homeless person had a legal right to shelter and that existing shelters were inadequate to shelter all those in need. A preliminary injunction was granted by Mr. Justice Andrew Tyler on December 24, 1981 providing that every homeless person seeking shelter should receive it and ordered that under no circumstances would the men’s shelter be closed during pendency of the litigation. The consent judgment set minimum requirements and operating standards which the city was obligated to follow. The decree also provided for short term emergency shelter in excess of capacity for no more than 30 days in one calendar year. Petitioner contends that respondent’s actions in effect frustrate this judgment which provide that every homeless person should be provided with shelter. Petitioner maintains that in order to fulfill its obligations, the city was forced to sleep men in overcrowded conditions in the men’s shelter, which was supposed to be used only as a central intake center with a maximum of 16 persons’ sleeping capacity.
The consent decree itself explicitly provided that the Commissioner of the New York State Department of Social Services agreed to reimburse the New York City Human Resources Association for the operation of shelter facilities referred to in this judgment pursuant to section 153 of the New York Social Services Law, except if such shelter facility fails to comply with the requirements for shelters contained in the rules and regulations of the department (18 NYCRR). Moreover, it provided that “nothing in this judgment shall prevent, limit or otherwise interfere with the authority of the Commissioner of the New York State *987 Department of Social Services to enforce and carry out her obligations under the New York Social Services Law, Title 18 of the New York Code of Rules and Regulations, or any applicable law.”
Section 153 of the Social Services Law governing State reimbursement of 50% of the cost of public institutional care states: “1. Expenditures made by social services districts, cities and towns for public assistance and care and its administration, pursuant to this chapter, shall, if approved by the department, be subject to reimbursement by the state, in accordance with the regulations of the department”.
Further, section 20 (subd 3, par [e]) of the Social Services Law provides that the department is authorized to withhold or deny State reimbursement, in whole or in part, from any social services district or city in the event of the failure of either of them to comply with the law, rules or regulations of the department relating to public assistance and care or the administration theory.
It is clear that respondent as Commissioner of New York State Department of Social Services had the authority as well as the obligation to follow department regulations and order petitioner to comply with sections 460-b and 460-c of the Social Services Law, which gives the department the authority to set the maximum capacity for adults in residential care facilities. In addition, 18 NYCRR 476.2 (a) and (c) states that each facility must operate in accordance with the terms and conditions of its operating certificate. The record indicates that at various periods throughout the disallowance period, the men’s shelter was operating up to 15 times the capacity listed in its operating certificate. It is not this court’s function to substitute its judgment for that of the Social Services Department which is vested with the responsibility to “effectively protect and assure the * * * health, safety and comfort” (Social Services Law, § 460) of the residents of the shelter facility and to ensure care “best adapted to the needs of the residents” (Social Services Law, § 460-c).
The record indicates the difficulties inherent in overcrowding the men’s shelter and the problems with using the building as a sleeping facility which is not entirely *988 consistent with the building design or purpose. Respondent’s deputy commissioner in a May 4, 1981 letter to petitioner, stated “that continued need cannot be met by a time extension of the expanded sleeping capacity at the 3rd Street Shelter. Based on the information available to us, the decline in the amount and quality of social services provided is parallel to the demand placed on the shelter staff and physical space for sleeping accommodations.”
Petitioner clearly was informed of the temporary nature of the arrangement and given due notice that more appropriate long-range alternative facilities would have to be found. Petitioner was also made aware of respondent’s intention to enforce its regulations and statutory duties by withholding reimbursement of its share of the operating costs.
Based upon the record, respondent’s determination was consistent with statute and departmental rules and regulations promulgated thereunder, and was not an arbitrary or capricious exercise of respondent’s authority. Petitioners’ contention that the method of computing the disallowance figure was unfair is equally without merit.
Section 153 (subd 6, par [a]) of the Social Services Law provides that claims for State reimbursement shall be made in such form and manner and at such times and for such periods as the department in its discretion shall determine.
Petitioner’s claim that the amount of disallowance was improperly calculated including 40 days in which petitioner did not exceed the licensed capacity at the men’s shelter. Respondent maintains it is not feasible to calculate the cost figure for each resident above capacity on each day that capacity was exceeded because the city’s claims are aggregated, rather than submitted on a per diem basis.
This court finds that petitioner has not overcome the presumption of validity which attaches to an agency’s acts in implementing a statute which it is authorized to administer. The mere fact that petitioner city believes that it could have formulated a better method in which to assess the disallowance costs is not sufficient to establish that the method chosen by respondent was without rational basis. It is well settled that the construction given statutes and *989 regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld (Matter of Howard v Wyman, 28 NY2d 434).
Petitioner also contends that it was entitled to a hearing in connection with a withholding of State reimbursement. This contention is erroneous and has no support in the law. An amendment to the law in 1971 (L 1971, ch 110, § 5, eff July 1, 1971) struck out provisions contained in the opening paragraph of subdivision 4 of section 20 of the Social Services Law requiring board approval and an opportunity for a hearing before the department could withhold State reimbursement from or deny State reimbursement to a social services district were deleted (see Social Services Law, § 20). Moreover, petitioner was given due notice of the proposed disallowance and the manner in which it was to be calculated.
Respondent was free to withhold State matching reimbursement pursuant to authority given under section 20 (subd 3, par [f]) of the Social Services Law if in respondent’s judgment petitioners’ operation of the shelter was contrary to its rules and regulations and could have a detrimental impact upon the homeless population who seek shelter at. this facility. Respondent’s determination, which withheld reimbursement for certain operating costs at the shelter facility, therefore, was not arbitrary or capricious.
Accordingly, petitioners’ application is denied and the petition dismissed.