OPINION OF THE COURT
Arthur E. Blyn, J.
The basic issue presented by this CPLR article 78 proceeding is whether respondents New York State Department of Social Services (NYSDSS) and the State of New York (the State) acted properly in imposing an administrative penalty in the amount of $20 million on petitioner the City of New York (the City) in March 1983, for the City’s purported failure to promptly reduce or close social services grants.
*133 Petitioner New York City Human Resources Administration (HRA) is responsible for administering the Aid to Dependent Children (ADC) and Home Relief programs in the City of New York, subject to the regulations of NYSDSS. ADC provides for bimonthly cash assistance payments to a parent or other relative for the benefit of a child under the age of 18 (or in some cases under the age of 19). The State reimburses the City 25% of each ADC grant, and the Federal Government reimburses the City 50% of each grant, if the program is administered in accordance with Federal requirements.
Home Relief provides bimonthly cash assistance payments to anyone unable to support themselves, and who is not receiving assistance from another social services program. The State reimburses the City 50% of each Home Relief grant; the Federal Government does not make any reimbursement under this program.
The papers before the court establish that the administration of the ADC and Home Relief programs is an incredibly complex task. Approximately 860,000 residents of the City receive relief under one of these programs. Thousands of public assistance eases are opened and closed each month, and all grants are subject to ongoing review to determine continued eligibility. The City accounts for 70% of the total caseload in the entire State.
The ADC and Home Relief programs are operated under rules, regulations and procedures promulgated by NYSDSS. The regulations and procedures relevant to this proceeding govern the process of public assistance ease closings and grant reductions — a process which saves the City (and the State) millions of dollars every month.
A New York City recipient of ADC or Home Relief is under a continuing obligation to advise HRA of any change of circumstances which would affect his or her eligibility to receive assistance or result in a reduction in the amount of assistance. This information, in addition to coming from the recipient, often comes to HRA’s attention through other sources (referred to as an "indication” of change in eligibility or degree of need). If HRA receives an indication of ineligibility, it must initiate and complete an investigation within 30 days, to determine whether circumstances exist requiring that a recipient’s case be closed or his or her aid reduced (18 NYCRR 351.22 [d]).
Other "infractions” by a recipient which require reduction *134 or withholding of assistance do not need to be investigated, such as where the recipient fails to appear for a periodic interview or enroll in employment programs.
Once HRA determines that a recipient’s grant must be reduced or the case closed, HRA must act promptly to prevent overpayment of assistance. The timeliness requirements for case closings and reductions must be balanced, however, against due process and notice requirements which protect the rights of the recipient. The timetable for case closings and reductions is set forth in 18 NYCRR 351.22.
In March 1981 NYSDSS commenced an audit to ascertain whether HRA was complying with the timetable for closing and reducing grants. The auditors found that HRA was not timely in a significant percentage of cases, resulting in an overpayment by HRA during the audit period (Jan. 1976 through Dec. 1980) of $77,636,984. Of that overpayment, the State had reimbursed the City the sum of $25,965,658. In March 1983 NYSDSS sent the City a notice of claim which listed, as a credit to the State, a $20 million "administrative penalty for failure to act timely to reduce grants”. The City now seeks, in this proceeding, to void the $20 million penalty assessed by NYSDSS.
The City asserts the following grounds for vacating the penalty: (i) NYSDSS lacked the authority to impose the penalty; (ii) the timeliness standard which formed the basis for the penalty is inconsistent with the Social Services Law, its implementing regulations, and the principles of due process; (iii) the City was never given notice of the timeliness standard which the NYSDSS auditors applied; (iv) the timeliness standard "was developed without any empirical or logical basis”; (v) the audit contains factual errors and used a flawed methodology; and (vi) the penalty, which was imposed retroactively, is barred by laches.
The State’s answer to the petition interposes several objections in point of law which must be addressed as threshold issues.
The State contends that petitioners do not have standing to bring the within proceeding. The court agrees that petitioner Gross, as Commissioner of HRA, clearly does not have standing under Matter of Beaudoin v Toia (45 NY2d 343), which held that local commissioners have no standing to seek judicial review of administrative determinations of the State commissioner. As the Court of Appeals stated (45 NY2d, at p *135 347): "Inasmuch as the local commissioners are agents of the State department they may not substitute their interpretations of the regulations of the State department for those of the State department or the State commissioner * * * To recognize any such right would be to undermine the supervisory authority of the State commissioner and to invite administrative chaos.”
The City of New York does have standing, however, to bring this proceeding "to protect the rights, property, or revenue of the city and its citizens” (City of New York v Blum, 121 Misc 2d 982, 983). Matter of Beaudoin (supra) cannot be interpreted to bar the City from seeking such relief.
Respondents next argue that the court lacks subject matter jurisdiction over this proceeding. Respondents’ contention that this entire action is only maintainable in the Court of Claims is without merit. This is not an action primarily for money damages, but one which seeks relief appropriate in an article 78 proceeding with an incidental request for money damages. (See, CPLR 7806.) The primary relief sought here falls under CPLR 7803 (3), and concerns whether a determination made by respondents was in violation of lawful procedure or was arbitrary and capricious.
The court now turns to the merits of the City’s petition. The crux of the City’s claim — pleaded in several alternative forms —is that the respondents acted arbitrarily and capriciously in applying a so-called "4- or 14-day standard” of timeliness on the audit which is the subject of this proceeding. Under the 4- or 14-day standard, HRA was required to close a case or reduce a grant (i) within 4 days from the first indication of change in circumstances of a recipient, where prior notice to the recipient was not required, or (ii) within 14 days of the first indication of change in circumstances of a recipient, where prior notice was necessary.
For the reasons stated below, the court agrees that the adoption of the 4- or 14-day standard was arbitrary and capricious, and must be overturned.
In the first instance, the City correctly notes that, under Social Services Law § 20 (3) (e), NYSDSS may withhold reimbursement only upon the failure of HRA or the City "to comply with law, rules or regulations of the department [NYSDSS] relating to public assistance and care or the administration thereof’. The 4- or 14-day standard is clearly not a law, and was never properly promulgated as a rule or regula *136 tion by NYSDSS. Indeed, the 4- or 14-day standard was applied for the first time on the audit itself, in order to give the auditors a means of determining whether or not a particular case closing or reduction was timely.
The only regulatory standard for timeliness is contained in 18 NYCRR 351.22. That section does not, however, establish any 4- or 14-day standard. In fact, section 351.22 contains no reference whatever to any arbitrary requirement that a case closing or reduction be effected within a specified number of days from the first indication of change in a recipient’s status. Instead, the regulation requires "immediate initiation” of action following the first indication of change. It is clear from the entire context of section 351.22, as well as other relevant regulations, that "immediate” means only "immediate under the circumstances of each case” — especially taking into account those circumstances relating to a recipient’s right to due process (e.g., in certain cases HR A should be permitted an opportunity to investigate and verify an indication of change). The court cannot find any basis for respondents’ interpretation of "immediate” as meaning "within 4 (or any other set number of) days”. The "immediate” requirement in section 351.22 is a subjective standard, which must be applied on a case-by-case basis.
The administrative penalty of $20 million assessed against HRA and the City, which was based upon the auditors’ application of the 4- or 14-day standard, was therefore improper.
It may well be that many of the case closings and reductions examined by the auditors were not accomplished in a timely fashion under the subjective requirements of section 351.22. That is a determination which can only be made upon a reexamination of the cases which does not purport to impose an arbitrary timeliness standard not found in respondents’ regulations. Respondents, if they deem it appropriate, are accorded leave to conduct such a reexamination.
The City’s petition is granted.