[600 NYS2d 939]

James Doe et al., on Behalf of Themselves and All Other Persons Similarly Situated, et al., Respondents, v David N. Dinkins, as Mayor of the City of New York, et al., Appellants, et al., Defendants.

First Department, July 29, 1993

APPEARANCES OF COUNSEL

*Julian L. Kalkstein* of counsel, New York City *(Leonard Koerner, Larry A. Sonnenshein* and *(George Gutwirth* with him on the brief; *O. Peter Sherwood, Corporation Counsel* of New York City, attorney), for appellants.

*Catherine J. Ross* of counsel, New York City *(Jay Greenfield* and *Daniel J. Leffell [Paul, Weiss, Rifkind, Wharton & Garrison],* and *Douglas Lasdon, David Singleton, Lisa Bambino* and *Patrick Horvath [The Legal Action Center For The Homeless]* with her on the brief; attorneys), for respondents.

## OPINION OF THE COURT

ROSENBERGER, J..

It was not an abuse of discretion to grant the plaintiffs' motion for a preliminary injunction directing the municipal defendants to reduce the population at two homeless shelters to 200 beds each, to cease the placement of individuals in certain areas of one of the shelters and to cure existing fire code violations.

The plaintiffs James Doe, a resident of the Sumner Avenue Armory Men's Shelter, John Roe, a resident of the Franklin Avenue Armory Men's Shelter, and The Legal Action Center for the Homeless, instituted this action on behalf of all past and present residents of the Armory Shelters. They seek, *inter alia,* a preliminary injunction ordering the municipal defendants to reduce the current population of the Sumner and Franklin Shelters, enforce the 30-bed limit in the dormitory room at the Franklin Shelter and to cure alleged fire code violations at both facilities.

The City is required to provide beds for any qualified homeless man seeking shelter *(Callahan v Carey,* Sup Ct, NY County, index No. 42582/79). Although 18 NYCRR 491.3 (g) (1) (i) mandates that the capacity in a shelter in a municipality of 500,000 or more persons not exceed 200 beds, nearly 700 men seek housing at the Franklin Shelter each day while approximately 550 men sleep in the Sumner facility. 18 NYCRR

491.10 (o) (9) (iv) limits occupancy of any sleeping room in a shelter to 30 beds. However, 400 men sleep in one space on the drill floor of the Franklin Shelter and more than 100 are housed on the top floor. The plaintiffs allege that fire hazards abound at the shelters and that the municipal defendants fail to inspect them adequately or to enforce applicable laws.

At a hearing on the motion for a preliminary injunction, the plaintiffs' experts testified that the residents of the Franklin and Sumner Shelters are at imminent risk of harm from the effects of the space in which they live, due to overcrowding, fire hazards, and their vulnerability to crime. Upon their inspection, the experts found no functioning fire alarm system in the sleeping areas of either facility and a lack of adequate smoke detectors to warn of fire. At the Sumner facility, the sprinkler system was also found to be inadequate, while the Franklin Shelter had no sprinkler system at all. The experts added that sprinklers are the most effective means of protecting from fire, particularly in facilities such as homeless shelters in which a large transient population resides. This is so since the residents are generally unfamiliar with the surroundings and need to be quickly notified of a fire emergency and of the safest and fastest evacuation route. Moreover, they noted that several exits located throughout the facilities violated applicable safety requirements, that the existing emergency lighting units were nonfunctional, that handrails had not been installed on stairways, and that interior corridors were not separated from other areas of the shelter by corridors and corridor doors constructed of fire retardant materials, all in violation of the NYCRR, and the Administrative Code of New York City. These experts concluded that reducing the population at the shelters to 200 beds each would ameliorate fire hazards.

The First Deputy Fire Commissioner of New York City, testifying for the defense, acknowledged that the City Building Code requires automatic sprinkler systems and electronically operated central fire alarm systems in shelters. Despite the conceded lack of a sprinkler system, noncomplying smoke detectors and overcrowding, he first labeled the Franklin Shelter "qualifiably unsafe", then safe for occupancy except for the mezzanine. He also stated that the Sumner Shelter was "safe for occupancy from a fire safety point of view", despite having issued violations to both shelters for having an insufficient number of smoke detectors, doors which are not fireproof and with regard to existing hardware, including

nonoperating emergency lighting. He also conceded that neither shelter's fire alarm is connected to a central station in violation of 18 NYCRR 491.10 (g) (5).

The Deputy Commissioner of Special Services for Adults at the New York City Human Resources Administration (HRA) maintained that reducing the occupancy at either of the shelters at this time would be impossible, because there are no facilities available to absorb the displaced population. However, an expert on behalf of the plaintiffs testified that the City could easily locate available housing from its list of nontaxpaying facilities, including unused schools, hospitals, psychiatric facilities and other administrative buildings.

The Supreme Court granted the plaintiffs' motion for a preliminary injunction and ordered the City to implement a plan to reduce the population of the shelters within 60 days. The court also directed that the following action be taken within 10 days of its order:

(1) Evacuate residents from the third-floor mezzanine area and wing area of the drill floor of the Franklin Shelter and provide them with other suitable residences.

(2) Fireproof all doors and comply with all other fire code requirements, and

(3) Increase the number of battery operated smoke detectors and monitor them daily.

The municipal defendants have failed to preserve their initial contention that this matter should have been decided by the Supreme Court Justice charged with administering the consent decree entered in *Callahan v Carey (supra)* instead of the Justice to whom it was assigned, since they neither objected to the case assignment nor sought a transfer to another Justice.

Similarly without merit is their contention that any change in armory capacities lies within the sole and exclusive jurisdiction of the *Callahan* court. The *Callahan* consent judgment was entered into on August 26, 1981 and set forth standards for homeless shelters. Nothing in the agreement precluded subsequent litigation, nor did the Justice attempt to reserve exclusive jurisdiction over all future claims. The Sumner and Franklin Shelters were not, in fact, among the shelters considered by the *Callahan* court and the DSS regulations at issue had not yet come into effect *(see, Wilkins v Perales,* 128 Misc 2d 265, *affd* 119 AD2d 1018, *lv denied* 68 NY2d 612). The *Callahan* judgment was also clear in stating that the agree-

ment was not intended to limit or interfere with the Commissioner of the New York State Department of Social Service's (DSS') authority to enforce the Social Service Law and the regulations set forth in 18 NYCRR.

The Supreme Court properly rejected the defendants' contention that DSS waived enforcement of its regulations regarding shelter capacity *(cf., Wilkins v Perales, supra)*. DSS may grant emergency six-month waivers of the 200-bed limitation (18 NYCRR 491.3 [g] [1]), but only under certain conditions, e.g., where the shelter seeking such waiver complies with all applicable codes and regulations (18 NYCRR 491.3 [g] [3]). Since numerous code violations, including fire code violations, were found to exist at both the Sumner and Franklin Shelters, they were ineligible for a waiver. In fact, because of the violations found to exist at the Franklin Shelter, DSS withheld some $1,800,000 of its allowable State reimbursement for operating expenses. In a report issued in March of 1992, DSS also cited the Sumner facility for NYCRR violations.

Despite their ineligibility for a waiver, HRA requested such a waiver of the 200-bed requirement on behalf of the Sumner Shelter on December 20, 1989, on behalf of both facilities on April 6, 1990 and on behalf of the Franklin Shelter on May 14, 1990. Although the defendants challenge the introduction of documents indicating that DSS rejected the requests on November 14, 1990, conditioning future consideration of such waiver requests on HRA's submission of an acceptable shelter occupancy reduction plan, the defense witnesses conceded that the City had not received a waiver.

On January 11, 1991, HRA requested a suspension of the 200-bed limit in order to give the City time to implement its plan to bring all shelters within compliance with State regulations. HRA was given an extension until March 1, 1991, at which time it was to submit a "detailed, site specific, acceptable long range" plan for shelter occupancy reductions. HRA was advised that if such plan were not submitted, "all current waivers for beds in excess of the regulatory limit will be suspended and additional administrative action will be considered." After HRA failed to meet the deadline, it was informed by DSS that the imposition of sanctions was being considered.

There is nothing in the record to support the defendants' allegation that the trial court, in issuing the preliminary injunction, failed to consider the *Callahan* consent judgment,

the purpose and statutory scheme of the Social Services Law or the defendants' purported "fair assumption" that a waiver of the 200-bed limit was in effect. As the defendants concede, the Commissioner of DSS has broad discretion to enforce her regulations. Nothing in the *Callahan* decree prevents the Commissioner from enforcing these regulations. Rather than being led to believe that a waiver was in effect, the City was informed by DSS, in no uncertain terms, that its application for a waiver was denied, and that no future applications would be considered unless a specific plan for occupancy reduction was submitted. The City did not submit the required plan.

In determining the propriety of the issuance of the preliminary injunction, our review is limited to whether or not there has been an abuse of discretion *(Kazdin v Putter,* 177 AD2d 456). It is now well settled that the Supreme Court has the power, as a court of equity, to grant an injunction mandating conduct by municipal agencies *(McCain v Koch,* 70 NY2d 109). Since the plaintiffs demonstrated a probability of success on the merits, the danger of irreparable injury in the absence of an injunction and a balance of the equities in their favor, the Supreme Court did not abuse its discretion in granting the relief requested *(Aetna Ins. Co. v Capasso,* 75 NY2d 860; *Grant Co. v Srogi,* 52 NY2d 496).

The defendants concede that the Sumner and Franklin Shelters exceed the 200-bed limit required by 18 NYCRR 491.3 (g) (1) (i) and that occupancy in the sleeping room at the Franklin facility exceeds the 30-bed limitation contained in 18 NYCRR 491.10 (o) (9) (iv). The defendants' application for a waiver of these requirements was denied. They were repeatedly warned that a failure to submit plans to reduce the population would jeopardize any future chance of obtaining a waiver and could result in the imposition of sanctions. The State, in fact, withheld reimbursement because of violations at the Franklin Shelter. It is undisputed that the shelters violate State and local fire laws, which render them ineligible for a waiver.

Human safety is in issue. The ultimate relief may be rendered inadequate, as the loss of one life would render permanent injunctive relief, granted at a later date, ineffective. The proof required for a finding of the likelihood of success on the merits is reduced *(see, Republic of Lebanon v Sotheby's,* 167 AD2d 142, 145; *see also, Matter of Toal v Brown,* 181 AD2d 581, *lv denied* 80 NY2d 758). The plaintiffs

need not demonstrate a certainty of success but rather, must make a showing of a likelihood of success on the merits *(Bingham v Struve,* 184 AD2d 85; *Tucker v Toia,* 54 AD2d 322).* The plaintiffs have amply demonstrated a likelihood of success on the merits and a danger of irreparable injury.

The balance of equities also lies in the plaintiffs' favor. The defendants' strenuous objection to the court's order because of their alleged inability to absorb the displaced men, and because services currently provided for the homeless will be interrupted, is unavailing. The City has been aware of the overcrowded conditions for more than a decade, but has taken no concrete steps to resolve the problem, despite being warned repeatedly and threatened with sanctions. The NYCRR regulation limiting beds at a shelter to 200 were issued as guidelines in 1981. The City failed to make a diligent search for other facilities to be utilized as homeless shelters. The defendants' claim of hardship because of the court's directive is, therefore, negated by the notice and warnings they have received. That hardship was caused by their own inaction.

Section 1 of article XVII of the State Constitution imposes a duty on the State and its subdivisions to aid, care for, and support the needy. The NYCRR regulations were enacted to fulfill this obligation. Compliance is mandatory despite a purported claim of insufficient funds *(see, Klostermann v Cuomo,* 61 NY2d 525; *Wilkins v Perales, supra).* The defense of lack of resources is "particularly unconvincing when uttered in response to a claim that existing conditions violate an individual's constitutional rights" *(Klostermann v Cuomo, supra,* at 537). The plaintiffs seek to have the municipal defendants comply with their statutory and constitutional obligations. Any inconvenience caused by compliance is outweighed by the harm which would be suffered otherwise.

Accordingly, the order of the Supreme Court, New York County (Alice Schlesinger, J.), entered on or about December 23, 1992, which, *inter alia,* granted the plaintiffs' motion for a preliminary injunction ordering the defendants, within 60 days, to reduce the current population at the Sumner Avenue and Franklin Avenue Armory Men's Shelters to 200 beds each; and, within 10 days, to cease the placement of homeless men in certain portions of the Franklin Armory Shelter and

to cure existing fire code violations in both shelters should be affirmed, without costs, and motion No. 573 should be denied.

MURPHY, P. J., CARRO, ROSS and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on or about December 23, 1992, affirmed, without costs, and the motion to strike portion of Appendix denied.