In the Matter of VTR FV, LLC, et al., Appellants, v TOWN OF GUILDERLAND et al., Respondents, and ABODE BLUE CHIP, LLC, et al., Respondents. [957 NYS2d 454]—

Stein, J.

Petitioners are the owners of an assisted care facility developed in accordance with phase I. After the enactment of Local Law No. 1 in 1993, no plans were made to build a skilled nursing facility on the phase IV site. In 2011, respondent Town Board of the Town of Guilderland amended Local Law No. 1 to expand the definition of "nursing home" to include an assisted

living facility and/or memory care facility, thereby enabling respondents Abode Blue Chip, LLC and Crestmoore Mill Hill Community Corporation to build a second assisted living or memory care facility within the Mill Hill PUD. Petitioners commenced this hybrid CPLR article 78 proceeding and declaratory judgment action seeking to annul the amendment to Local Law No. 1 and further seeking a declaration that such amendment is unconstitutional, null and void. Supreme Court granted respondents' pre-answer motions to dismiss and this appeal ensued.

We affirm. Supreme Court properly dismissed the first two causes of action set forth in the petition* based upon petitioners' lack of standing. To achieve standing, petitioners were required to show that they suffered an injury in fact different from that suffered by the general public (see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d 297, 304 [2009]). Moreover, as the challengers to an administrative action, petitioners bore the burden of demonstrating, not only that such action "will in fact have a harmful effect on [them, but also] that the interest asserted is arguably within the zone of interest to be protected by the statute" (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 412 [1987] [internal quotation marks and citation omitted]).

Here, petitioners allege that, in reliance on the phased development plan under which they would be operating the only assisted living residence in the Mill Hill PUD, they purchased and made extensive renovations to an existing facility, and completed the lengthy process for approval as an assisted living facility. Their allegations distill to a claim of "the threat of increased business competition, which is not an interest protected by the zoning law[ ]" (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d at 415). Thus, notwithstanding the proximity of petitioners' property to the phase IV site affected by the amendment to Local Law No. 1, the economic harm they allege is insufficient to confer standing on them (see id. at 409-410, 414).

Nor have petitioners alleged any specific noneconomic

---

* The first cause of action asserted that the amendment of Local Law No. 1 was arbitrary and capricious because respondents "failed to adequately consider and place primary importance on the intent and function of the Mill Hill PUD" in contravention of Town Code § 280-17 (H). The second cause of action asserted that the Town Board's failure to complete a full environmental assessment form was contrary to the Town's comprehensive plan, requiring annulment of its finding of no significant environmental impact for purposes of the State Environmental Quality Review Act (see ECL art 8).

environmental harm so as to establish an injury that falls within the zone of interest protected by the State Environmental Quality Review Act (*see* ECL art 8; *Matter of Village of Canajoharie v Planning Bd. of Town of Florida*, 63 AD3d 1498, 1501 [2009]; *Matter of Town of Coeymans v City of Albany*, 284 AD2d 830, 833 [2001], *lv denied* 97 NY2d 602 [2001]; *Matter of McGrath v Town Bd. of Town of N. Greenbush*, 254 AD2d 614, 615 [1998], *lv denied* 93 NY2d 803 [1999]). Accordingly, Supreme Court properly dismissed the first two causes of action alleged in the petition.

Supreme Court also correctly determined that the 2011 amendment did not constitute illegal spot zoning, as petitioners failed to establish that the amendment was not "part of a well-considered and comprehensive plan calculated to serve the general welfare of the community" (*Matter of Save Our Forest Action Coalition v City of Kingston*, 246 AD2d 217, 221 [1998] [internal quotation marks and citations omitted]; *see Matter of Baumgarten v Town Bd. of Town of Northampton*, 35 AD3d 1081, 1084 [2006]). While it is indeed true that Local Law No. 1 originally called for a skilled nursing facility on the phase IV site, a central concern of the Mill Hill PUD in 1993 was "to encourage the creation of affordable housing opportunities for retirement aged persons and to further encourage the creation of mixed-use neighborhoods." Inasmuch as no plans had been made to build a skilled nursing facility on the phase IV site and the land had remained vacant for more than 17 years, expanding the definition of "nursing home" to include the project proposed by Abode and Crestmoore took into account changing conditions (*see Matter of Town of Bedford v Village of Mount Kisco*, 33 NY2d 178, 188 [1973]), furthered the purpose of the law and addressed the concerns of the community. Moreover, the amendment did not permit a use "totally different from that of the surrounding area" (*Matter of Rotterdam Ventures, Inc. v Town Bd. of the Town of Rotterdam*, 90 AD3d 1360, 1362 [2011] [internal quotation marks and citations omitted]). Thus, although the amendment may have benefitted Abode and Crestmoore, "it was nevertheless[ ] enacted for the general welfare of the community" (*Goodrich v Town of Southampton*, 39 NY2d 1008, 1009 [1976]; *see Boyles v Town Bd. of Town of Bethlehem*, 278 AD2d 688, 690-691 [2000]), and petitioners failed to show that it constituted illegal spot zoning.

Contrary to petitioners' contention, the amendment of Local Law No. 1 did not effect a regulatory taking of their property without just compensation. Where, as here, the government action does not eliminate all economically viable uses of the prop-

erty, courts must examine several factors to determine whether a taking nonetheless occurred, "including the [amendment's] economic effect on the landowner, the extent to which the [amendment] interferes with reasonable investment-backed expectations, and the character of the government action" (*Matter of Smith v Town of Mendon*, 4 NY3d 1, 9 [2004] [internal quotation marks and citation omitted]). As Supreme Court noted, the 2011 amendment served a legitimate governmental interest in expanding affordable housing options for seniors in the area, in addition to "increasing the tax base and creating jobs." Petitioners have not established that the amendment interfered with their investment-backed expectations, particularly in light of the fact that there have apparently been no plans to build a skilled nursing facility on the phase IV site for over 17 years. While petitioners assert that they expended significant financial resources purchasing, renovating and investing in their facility, there is no evidence in the record to suggest that the change brought about by the amendment interfered in any way with the returns on those investments. Thus, Supreme Court correctly determined that petitioners failed to provide "evidentiary support for their conclusory assertion of financial harm" and did not meet their heavy burden of showing that the amendment resulted in a regulatory taking (*see Held v State of New York Workers' Compensation Bd.*, 85 AD3d 35, 43 [2011], *lv dismissed and denied*, 17 NY3d 837 [2011], *cert denied* 566 US —, 132 S Ct 1906 [2012]).

Mercury, J.P., Rose, Kavanagh and Egan Jr., JJ., concur. Ordered that the judgment is affirmed, with costs.