Lahtinen, J.E
Appeal from a judgment of the Supreme Court (Lambert, J), entered November 29, 2012 in Delaware County, which dismissed petitioner’s application, in a proceeding pursuant to CFLR article 78, to annul respondent Andes Town Board’s adoption of Resolution No. 31 of 2011.
The vast majority of respondent City of New York’s drinking water comes from the watershed located west of the Hudson River, and that area is subject to an array of regulations, permits and an agreement affecting the City and communities in the watershed (see generally Worcester Creameries Corp. v City of New York, 54 AD3d 87, 89 [2008]). In 2001, petitioner purchased a 58-acre dairy farm in the watershed in the Village of Andes, Delaware County.[1] Her property was located in an area impacted by the 1997 Watershed Memorandum of Agreement (hereinafter MOA) which had been executed by, among others, the City, the Environmental Frotection Agency, the Department of Environmental Conservation (hereinafter DEC), the New York City Department of Environmental Frotection (hereinafter NYC-DEE) and the Coalition of Watershed Towns. The MOA included a land acquisition program whereby the City could acquire *1222 undeveloped land in upstate counties to protect the watershed; however, municipalities within that region could protect future economic vitality by designating certain areas as excluded from the acquisition program. The parcel that petitioner purchased had been excluded from acquisition in fee, but the MOA did not prohibit the City from acquiring a conservation easement. In 2006, petitioner applied to the Watershed Agricultural Council hoping to sell a conservation easement and, while correspondence was traded, the Council never made an offer to purchase an easement on her property.[2]
In December 2010, DEC issued a 15-year water supply permit to NYCDEP authorizing continued land and easement acquisitions by the City within the watershed. However, the permit included special condition No. 10 under which certain geographical areas could be excluded from acquisition by the City—in fee or by easement—if a municipality promptly passed a resolution designating such locations as hamlet areas. In May 2011, respondent Andes Town Board held a public hearing regarding a resolution to exclude some property in the Town as per special condition No. 10, and petitioner appeared, by counsel, at the hearing and by submission of post-hearing written comments in which she opposed including her farm property in the excluded area because she wanted to continue to attempt to sell a conservation easement to the City. Nonetheless, the Board adopted Resolution No. 31 of 2011, which excluded a certain area in the Town that encompassed petitioner’s farm from any acquisition by the City as per special condition No. 10 of NYCDEP’s 2010 permit from DEC.
Petitioner commenced this proceeding in July 2011 against the Board, its members and the Town Supervisor (hereinafter collectively referred to as respondents) and the City (which appeared but took no position) seeking to annul Resolution No. 31. She alleged, among other things, that respondents failed to follow proper procedures in adopting Resolution No. 31, that they acted arbitrarily and that the resolution constituted a de *1223 facto taking without just compensation. Supreme Court dismissed the petition. Petitioner appeals.
Petitioner contends that respondents failed to follow applicable procedures and, thus, Resolution No. 31 was not properly enacted.[3] Special condition No. 10 of the DEC permit required municipalities that were considering adopting a resolution that excluded certain areas from acquisition by the City to, among other things, give appropriate forms of notice and allow a public comment period of at least 30 days following such notices. Notice was duly given in mid-April 2011, a public hearing was held on May 10, 2011 and written comments were permitted until May 20, 2011. Petitioner asserts that respondents improperly voted on Resolution No. 31 at the close of the May 10, 2011 hearing and, in fact, the transcript of the meeting where the resolution was adopted contains two dates, May 10, 2011 and June 14, 2011. Respondents state that the reference to May 10, 2011 is a typographical error and the record bears this out since, among other things, the voting at the June 14, 2011 meeting on the resolution included a Board member (Martin Liddle) who was not present at the May 10, 2011 hearing, but was present at the June 14, 2011 meeting.[4] Landowners were then notified by letter dated June 14, 2011, which stated that the resolution had passed at the meeting occurring on that same date. The record establishes that respondents complied with the requirements of special condition No. 10 and, contrary to petitioner’s contention, she was not otherwise deprived of due process (see generally Matter of Cioppa v Apostol, 301 AD2d 987, 990 [2003]; Matter of Twin Town Little League v Town of Poestenkill, 249 AD2d 811, 812-813 [1998], lv denied 92 NY2d 806 [1998]).
Resolution No. 31 did not exceed respondents’ authority by improperly restricting ownership or transferability of petition *1224 er’s property. Towns have broad authority to regulate land use within their borders (see O’Mara v Town of Wappinger, 9 NY3d 303, 310-311 [2007]). Through voluntary agreement and accepting DEC conditions, the City consented not to be a potential purchaser of some upstate property if the local municipalities opted to exclude the property from land acquisition by the City. This was part of a delicate balance designed to protect the watershed and save the City significant money while safeguarding the economic vitality of upstate communities (see Worcester Creameries Corp. v City of New York, 54 AD3d at 89). It was not an improper attempt by a local municipality to regulate who owns or occupies property (see Matter of Dexter v Town Bd. of Town of Gates, 36 NY2d 102, 105 [1975]), but, in essence, the withdrawal of one potential purchaser who received a significant benefit. Petitioner was still able to sell an interest in her property to any willing purchaser (and, in fact, has done so). The City essentially elected—albeit through a complex arrangement—not to be a potential purchaser. Respondents did not exceed their authority nor has petitioner shown that respondents’ adoption of Resolution No. 31 under the prevailing circumstances was arbitrary, unreasonable or otherwise unlawful (see generally Matter of Rotterdam Ventures, Inc. v Town Bd. of the Town of Rotterdam, 90 AD3d 1360, 1362 [2011]).
We are unpersuaded by petitioner’s argument that Resolution No. 31 effected a de facto taking of her property for which she is entitled to just compensation. Where, as here, “the contested [resolution] falls short of eliminating all economically viable uses of the encumbered property, the Court looks to several factors to determine whether a taking occurred, including ‘the [resolution’s] economic effect on the landowner, the extent to which the [resolution] interferes with reasonable investment-backed expectations, and the character of the government action’ ” (Matter of Smith v Town of Mendon, 4 NY3d 1, 9 [2004], quoting Palazzolo v Rhode Island, 533 US 606, 617 [2001]; accord Matter of VTR FV, LLC v Town of Guilderland, 101 AD3d 1532, 1534-1535 [2012]). The resolution’s result was that one potential purchaser—who had not made any offer during the years when an easement on petitioner’s farm could have been purchased—no longer remained a potential purchaser. Petitioner has since found another willing purchaser. The resolution did not hinder the use that was being made of the property as a farming operation. The purpose of the resolution was to protect the Town’s potential for growth and economic sustainability, which was one of the many goals of the various parties involved in the watershed MOA and consistent with an overriding purpose of maintaining a safe, ample and relatively inexpensive *1225 drinking water supply for the City. Petitioner “did not meet [her] heavy burden of showing that the [resolution] resulted in a regulatory taking” (Matter of VTR FV, LLC v Town of Guilderland, 101 AD3d at 1535; see de St. Aubin v Flacke, 68 NY2d 66, 76 [1986]).
The remaining arguments have been considered and are either unpreserved or unavailing.
Stein, Garry and Rose, JJ., concur.
Ordered that the judgment is affirmed, without costs.

. The Village thereafter dissolved becoming a hamlet within the Town of Andes.

. To facilitate the goal of protecting the City’s drinking water supply, the MOA land acquisition program allows purchases (but not use of eminent domain) by NYCDEP of land and easements, and also the acquiring of agricultural conservation easements by the Watershed Agricultural Council, which works in conjunction with and is funded by NYCDEP (see generally Watershed Agricultural Council—Conservation Easements—About the CE Program, http://www.nycwatershed.org/ce_about.html [accessed Apr. 3, 2014]; see also 1997 New York City Watershed Memorandum of Agreement, http://dos.ny.gov/ watershed/nycmoa.html [accessed Apr. 3, 2014]). Given the basic unity of interest and purpose, these entities are sometimes jointly referred to herein as the City.

. Although petitioner sold the subject farm while this appeal was pending, such action does not necessarily render moot her contention that Resolution No. 31 was not validly enacted (see CPLR 1018; Pritzakis v Sbarra, 201 AD2d 797, 798 [1994]; Froehlich v Town of Huntington, 159 AD2d 606, 607 [1990], appeal dismissed 76 NY2d 935 [1990], lv denied 77 NY2d 803 [1991]; see also Matter of Cohen v Board of Appeals of Vil. of Saddle Rock, 100 NY2d 395, 399 n 2 [2003]). In any event, petitioner reportedly still owns property affected by the resolution and she also asserted constitutional violations (see Coleman v Daines, 19 NY3d 1087, 1090 [2012]; Blye v Globe-Wernicke Realty Co., 33 NY2d 15, 19 [1973]), the latter of which would be converted to an appropriate action pursuant to CPLR 103 (c), if meritorious (see Matter of Aydin v Commissioner of Taxation & Fin., 81 AD3d 1203, 1204 n [2011]; cf. Goehler v Cortland County, 70 AD3d 57, 61 [2009]).

. We further note that the record contains a newspaper article by a reporter who was listed as present at the June 14, 2011 meeting, stating that the resolution was passed at the meeting on June 14, 2011.