OPINION OF THE COURT
James H. Ferreira, J.
Petitioner is a domestic business corporation which owns and operates Finger Lakes Gaming and Race Track, located in the Town of Farmington, Ontario County. In this CPLR article 78 proceeding, petitioner challenges a determination of respondent New York State Gaming Facility Location Board (hereinafter the Location Board), pursuant to Racing, Pari-Mutuel Wagering and Breeding Law article 13, that respondent Lago Resort & Casino (hereinafter Lago) is eligible for a gaming facility license.
Background
Effective January 1, 2014, the New York Constitution was amended to permit casino gambling in the state “at no more than seven facilities as authorized and prescribed by the legislature” (NY Const, art I, § 9 [1]). The Upstate New York Gaming Economic Development Act of 2013, which went into effect on January 1, 2014, authorizes the creation of four destination resort casinos in upstate New York and establishes a process for selecting the locations for those casinos (see Racing, Pari-Mutuel Wagering and Breeding Law §§ 1300, 1311 [1]; 1320). The statute specifically provides that respondent New York State Gaming Commission (hereinafter the Commission) “is authorized to award up to four gaming facility licenses, in regions one, two and five of zone two” (Racing, Pari-Mutuel Wagering and Breeding Law § 1311 [1]). In March 2014, the *195 Location Board issued a request for applications (hereinafter RFA) to develop and operate a gaming facility in New York State. The Location Board received 17 applications in response to the RFA. Respondent Wilmorite, Inc. submitted an application in which it proposed to develop Lago in the Town of Tyre, Seneca County, located in region five of zone two.[1] In a final determination dated February 27, 2015, the Location Board selected three applicants—including Lago—to apply to the Commission for a gaming facility license. Petitioner thereafter commenced this CPLR article 78 proceeding challenging the Location Board’s selection of Lago.
In the petition, petitioner argues that the Location Board’s determination is arbitrary and capricious because it failed to uniformly or consistently consider the factors of “cannibalization”—i.e. the shifting of existing gaming revenue from currently licensed gaming facilities to a newly-licensed casino— and maximizing revenue. Petitioner asserts that, with respect to Lago, the Location Board ignored significant evidence of a high rate of cannibalization, failed to consider the impact of the casino on neighboring communities and the maximization of revenues, and was motivated by an improper belief that it needed to approve an application from each region. Petitioner seeks an order annulling that part of the Location Board’s determination that found Lago eligible for a gaming facility license and granting it injunctive relief.
Respondents have submitted papers in opposition, arguing, among other things, that the petition should be dismissed on the ground that petitioner lacks standing to commence this proceeding. Petitioner has submitted a reply and has also moved for an order striking, as incomplete, the record of the proceedings submitted by the Location Board and Commission pursuant to CPLR 7804 (e). Respondents oppose the motion.
By letter to the court dated July 17, 2015, petitioner requested an adjournment of this proceeding in light of the Fourth Department’s recent decision in Matter of Dawley v Whitetail 414, LLC (130 AD3d 1570 [4th Dept 2015]). Respondents opposed the request. On July 27, 2015, the court heard oral argument in this matter; the argument was limited to the issues of standing and petitioner’s request for an adjournment.
*196 Standing
The court turns first to the issue of petitioner’s standing to commence this proceeding. “Whether a person [or entity] seeking relief is a proper party to request an adjudication is an aspect of justiciability which, when challenged, must be considered at the outset of any litigation” (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 769 [1991]). In order to establish standing, petitioner must “demonstrate both an injury-in-fact and an injury falling ‘within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the agency has acted’ ” (Matter of Park Manor Rehabilitation & Health Care Ctr., LLC v Shah, 129 AD3d 1276, 1277 [3d Dept 2015], quoting New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]; see Matter of VTR FV, LLC v Town of Guilderland, 101 AD3d 1532, 1533 [3d Dept 2012]). The “existence of an injury in fact—an actual legal stake in the matter being adjudicated— ensures that the party seeking review has some concrete interest in prosecuting the action which casts the dispute ‘in a form traditionally capable of judicial resolution’ ” (Society of Plastics Indus. v County of Suffolk, 77 NY2d at 772, quoting Schlesinger v Reservists Comm. to Stop the War, 418 US 208, 220-221 [1974]). “The injury in fact element must be based on more than conjecture or speculation” (Matter of Animal Legal Defense Fund, Inc. v Aubertine, 119 AD3d 1202, 1203 [3d Dept 2014]).
Moreover, “ ‘Competitive injury, in and of itself, does not confer standing upon a petitioner unless such injury falls within the zone of interest of the controlling statute’ ” (Matter of Dorsett-Felicelli, Inc. v County of Clinton, 18 AD3d 1064, 1065 [3d Dept 2005], lv denied 5 NY3d 716 [2005], quoting Matter of C.L.B. Check Cashing v McCaul, 5 AD3d 593, 593 [2d Dept 2004]; see Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 11 [1975]). The zone of interest “prerequisite ensures that a group or an individual ‘whose interests are only marginally related to, or even inconsistent with, the purposes of the statute cannot use the courts to further their own purposes at the expense of the statutory purposes’ ” (Matter of Transactive Corp. v New York State Dept. of Social Servs., 92 NY2d 579, 587 [1998], quoting Society of Plastics Indus. v County of Suffolk, 77 NY2d at 774). Notably, courts “have been reluctant to apply these principles in an overly restrictive manner where the result would be to completely shield a particular action from judicial review” (Matter of Association for a Better Long *197 Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d 1, 6-7 [2014]).
Here, petitioner’s alleged injury is purely economic or competitive. Petitioner asserts in the petition that it “has suffered and will continue to suffer significant injury” as a result of the challenged determination to deem Lago eligible for a gaming facility license (petition ¶ 13). Specifically, petitioner alleges that its established gaming facility is 25 miles from the proposed Tyre casino and that “the severe rate of cannibalization that will result from construction of the Tyre casino” will significantly reduce petitioner’s gaming revenues, prevent petitioner from recouping its capital investments and “endangers the very existence of [its] gaming facility” {id.). However, petitioner has submitted no evidence or alleged any facts establishing that it has, in fact, been injured by the Location Board’s determination, and the court finds its allegation that it will be injured in the future to be speculative (see Matter of Animal Legal Defense Fund, Inc. v Aubertine, 119 AD3d at 1203).
In any event, competitive injury, such as that alleged by petitioner here, is insufficient to confer standing unless such injury is within the zone of interests protected by the controlling statute (see Matter of Dairylea Coop. v Walkley, 38 NY2d at 11). The court finds that petitioner has failed to establish that any alleged economic or competitive injury that it has suffered is within the zone of interests protected by article 13 of the Racing, Pari-Mutuel Wagering and Breeding Law. Racing, Pari-Mutuel Wagering and Breeding Law § 1300 provides the following legislative findings:
“1. New York state is already in the business of gambling with nine video lottery facilities, five tribal class III casinos, and three tribal class II facilities;
“2. New York state has more electronic gaming machines than any state in the Northeast or Mideast;
“3. While gambling already exists throughout the state, the state does not fully capitalize on the economic development potential of legalized gambling;
“4. The state should authorize four destination resort casinos in upstate New York;
“5. Four upstate casinos can boost economic devel *198 opment, create thousands of well-paying jobs and provide added revenue to the state;
“6. The upstate tourism industry constitutes a critical component of our state’s economic infrastructure and that four upstate casinos will attract non-New York residents and bring downstate New Yorkers to upstate;
“7. The casino sites and the licensed owners shall be selected on merit;
“8. Local impact of the casino sites will be considered in the casino evaluation process;
“9. Revenue realized from casinos shall be utilized to increase support for education beyond that of the state’s education formulae and to provide real property tax relief to localities;
“10. Casinos will be tightly and strictly regulated by the commission to guarantee public confidence and trust in the credibility and integrity of all casino gambling in the state and to prevent organized crime from any involvement in the casino industry;
“11. The need for strict state controls extends to regulation of all persons, locations, practices and associations related to the operation of licensed enterprises and all related service industries as provided in this article;
“12. The state and the casinos will develop programs and resources to combat compulsive and problem gambling;
“13. The state will ensure that host municipalities of casinos are provided with funding to limit any potential adverse impacts of casinos;
“14. As thoroughly and pervasively regulated by the state, four upstate casinos will work to the betterment of all New York.”
The clear overriding purpose of the statute is to promote economic growth, capitalize on development potential, boost economic development and create jobs and revenue. The statute neither addresses nor protects the interests of competing gambling establishments such as petitioner, and nothing in the statute supports a finding that a purpose of the statute was to prevent destructive competition and protect existing gaming establishments in upstate New York from competition. Rather, the statute expressly authorizes four new casinos and, in fact, *199 promotes competition (compare Matter of Dairylea Coop. v Walkley, 38 NY2d at 11 [“where a statute reflects an overriding legislative purpose to prevent destructive competition, an injured competitor has standing to require compliance with that statute”]).[2] Although petitioner claims that the legislative history evidences a concern with “cannibalization,” the court could find no support for that claim in the bill jacket, which is silent as to the issue of the impact of the statute on businesses such as petitioner’s.
The court does not find that the fact that the statute provides for the consideration of “local impact” in selecting a gaming facility license applicant establishes an intent to protect neighboring gambling establishments from competition (see Racing, Pari-Mutuel Wagering and Breeding Law §§ 1300 [8]; 1320 [2]). The “local impact and siting factors” to be considered by the Location Board do not require the consideration of any negative competitive impact on existing gambling businesses (see Racing, Pari-Mutuel Wagering and Breeding Law § 1320 [2]).[3] Likewise, the court disagrees with petitioner that an intent to protect businesses like petitioner’s can be found in the fact that the statute requires the Licensing Board to consider “maximizing revenues received by the state and localities” (see Racing, Pari-Mutuel Wagering and Breeding Law § 1320 [1] [b]). The court also rejects petitioner’s contention that the Licensing Board’s RFA and its own actions and findings with respect to its February 27, 2015 determination establish that petitioner’s alleged injury is within the zone of *200 interests protected by the statute. The court does not find the substance of the Location Board’s determination to be relevant to the issue of standing. The court’s inquiry is whether petitioner’s asserted injury “fall[s] within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the agency has acted” (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d at 211).[4] Finally, the court is unpersuaded by petitioner’s argument that, if it does not have standing, then no one will be able to challenge the Location Board’s determination because each of the applicants executed a waiver of the applicant’s right to challenge the Location Board’s determination.
In sum, the court finds that petitioner’s financial or economic interest is not an interest protected by the statute and, therefore, petitioner has failed to establish that it has standing to commence this proceeding (see Matter of Dorsett-Felicelli, Inc. v County of Clinton, 18 AD3d at 1065). As such, the petition must be dismissed. Petitioner’s request for an adjournment of the proceeding and its motion to strike the record are both denied.
Accordingly, it is hereby ordered and adjudged that the petition is in all respects dismissed without costs; and it is further ordered that petitioner’s motion to strike the record is denied.

. Region five of zone two includes “Broome, Chemung (east of State Route 14), Schuyler (east of State Route 14), Seneca, Tioga, Tompkins, and Wayne (east of State Route 14) counties” (Racing, Pari-Mutuel Wagering and Breeding Law § 1310 [2] [b] [5]).

. The court finds no support in the statute or legislative history for petitioner’s argument that the authorization of a limited number of casinos evidences an intent by the legislature to limit destructive competition.

. Those factors are listed as follows:
“(a) mitigating potential impacts on host and nearby municipalities which might result from the development or operation of the gaming facility;
“(b) gaining public support in the host and nearby municipalities which may be demonstrated through the passage of local laws or public comment received by the board or gaming applicant;
“(c) operating in partnership with and promoting local hotels, restaurants and retail facilities so that patrons experience the full diversified regional tourism industry; and “(d) establishing a fair and reasonable partnership with live entertainment venues that may be impacted by a gaming facility under which the gaming facility actively supports the mission and the operation of the impacted entertainment venues” (Racing, Pari-Mutuel Wagering and Breeding Law § 1320 [2]).

. For this reason, the court also rejects petitioner’s argument that it must determine petitioner’s motion to strike the record—and ensure that it has a complete record of the proceedings—before addressing the issue of standing.